IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| BOBBY J. THOMPSON, | * |
| Plaintiff, | * |
| v. | * |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | *   No. 4:14CV00688-JJV |
| Defendant. | * |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Bobby J. Thompson, appeals the final decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits under Title II of the Social Security Act and for supplemental security income benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

### I.   BACKGROUND

On June 8, 2010, Plaintiff protectively filed for benefits due to breathing problems, irregular heart beat, knee problems, and back problems. (Tr. 110, 344) An Administrative Law Judge ("ALJ") denied Plaintiff's claims in a February 23, 2012, decision, but the ruling was remanded by the Appeals Council. (Tr. 110-118, 125-126) Upon remand, the ALJ held a hearing on July 10, 2013, where Plaintiff appeared with his lawyer. At the hearing, the ALJ heard testimony from Plaintiff, his sister, and a vocational expert ("VE"). (Tr. 57-102)

The ALJ issued a decision on August 5, 2013, finding that Plaintiff was not disabled under the Act. (Tr. 20-31) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4)

1

Plaintiff, who was forty-eight years old at the time of the hearing, has a high school education and past relevant work experience as an equipment operator, construction worker, stocker, security guard, dishwasher, apartment cleaner, flagger, and forklift operator. (Tr. 93-95)

## II. DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2009, and he had severe impairments in the form of degenerative joint disease in both knees and the right elbow, chronic low back pain, status post hernia surgery, and dysthymic disorder. (Tr. 22) However, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 23)

The ALJ assessed that Mr. Thompson has the residual functional capacity ("RFC") to do light work, but can never climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. He can frequently balance and use his right arm to reach and handle. He is limited to simple, routine, repetitive work where interpersonal contact is incidental to work performed and supervision is simple, direct, and concrete. (Tr. 25) The VE testified that the jobs available with these limitations were cashier II and Plaintiff's past relevant work as a flagger. (Tr. 96-97) Accordingly, the ALJ determined that Plaintiff could perform a significant number of other jobs existing in the national economy, and found he was not disabled.

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

### III.     ANALYSIS

####         A.     Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.[3] Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

####         B.     Plaintiff's Arguments for Reversal

Plaintiff asserts that the Commissioner's decision should be reversed because the ALJ: (1) failed to consider all of his impairments; (2) failed to follow the Appeals Council's instructions when deciding the RFC; (3) improperly determined he could perform his past relevant work as a flagger directing traffic for road construction; (4) and considered jobs not within the RFC. (Doc. No. 16)

#####              1.     Impairments

Plaintiff argues that the ALJ "understated" his impairments because the ALJ minimized the results of a August 30, 2011, MRI, disregarded his "recurrent major depression," and did not properly consider the knee and back impairments. (*Id.*) I do not take this argument lightly as back pain is a debilitating impairment with an impact that is generally hard to gauge. Plaintiff correctly points out that an August 30, 2011, MRI "reveals a central annular tear with significant disc

---

[3] *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4] *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5] *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

desiccation, mild to moderate bilateral face arthropathy and a diffuse disc bulge at the L5-S1 level." (*Id.*)  But the doctor also noted that there was "no significant thecal sac compression" and "minimal to mild narrowing of the right neural foramen . . . at L5-S1 level."  (Tr. 688)  And a 2010 consultative exam revealed that Plaintiff could stand and walk without assistive devices, had a normal gait, and had normal range of motion in all extremities.  (Tr. 402-403)  There was also minimal degeneration in both knees. (Tr. 404)  Additionally, as the ALJ noted, Plaintiff was not taking any medications for his pain[6] and had undergone only conservative treatment for both knee and back pain.[7]  (Tr. 26, 86-87, 723)  So while there is clearly some evidence that supports Plaintiff's claims, based on the overall medical evidence, I am unable to conclude that the ALJ committed reversible error.

Additionally, Plaintiff was prescribed only physical therapy and anti-inflammatories for his knee and back impairments.  And notes from November 2011 reveal that Plaintiff did not keep his physical therapy appointment and this was the third time he missed an appointment.  (Tr. 691, 709)  The fact that Plaintiff did not attend therapy as prescribed weighs against his claim that his lower back pain is disabling.[8]

There are also inconsistencies related to Plaintiff's mental impairments.  (Tr. 466-467)  Though he claims to be depressed, he ran out of his medications five months before the hearing but had not attempted to refill them.  (Tr. 78)

---

[6]*Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014) (lack of narcotic medications can be considered when weighing credibility of claims).

[7]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

[8]*Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.).

4

Moreover, Plaintiff appears to have long history of substance abuse issues. Though he testified that he had not had a drink since early 2011, this is contradicted by other evidence of record. (Tr. 80) Notes from January 2011 reflect Plaintiff "was referred to substance abuse treatment – [but] he has not returned to start the outpatient treatment program [at Family Service Agency]. Suggested detox first." (Tr. 470) In January 2011, he reported that he quit drinking "years ago," yet also told the doctor that he had a drink just the night before. (Tr. 472) And notes from September 2010, indicate that Plaintiff "needs to cut back on alcohol." (Tr. 432) In October 2011, it was "strongly recommended that patient cut back on [alcohol] and consider seeking treatment." (Tr. 699) In fact, the records indicate that Plaintiff was consuming excessive amounts of alcohol throughout 2011. (Tr. 685, 689, 698, 740) It also appears that Plaintiff has a history of smoking marijuana, though he is inconsistent in his reporting. For example, he advised an examining doctor that he smoked more marijuana since his mother's death in 2008, but in other records he repeatedly denies using illegal drugs. (Tr. 471, 473 698, 711, 725) He also testified that he has never had a problem with illegal drugs. (Tr. 80)

Plaintiff was told he needed therapy for his back but testified that he did not seek therapy because he could not afford it. (Tr. 76) While I am sympathetic to Plaintiff's inability to afford treatment, smoking marijuana and drinking alcohol are expensive habits that can be considered when weighing Plaintiff's credibility. Additionally, they are habits that directly exacerbate Plaintiff's depression. And despite his claims to the contrary, it appears that he has continued to smoke marijuana and drink alcohol despite repeatedly being directed to stop by his treating doctors.[9]

---

[9]*Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain medication.").

5

      2.    RFC Determination

Plaintiff contends that the ALJ did not comply with the Appeals Council's remand instructions. The Appeals Council remanded the case because there were internal inconsistencies in the opinion regarding the RFC and the evidence relied on by the ALJ. However, there are no conflicts between the ALJ's decision and the evidence he relied upon; therefore, the ALJ acted in accordance with the Council's directive.

In addition, the ALJ's RFC determination was impacted by Plaintiff's credibility issues. Numerous credibility issues are revealed in the record. Plaintiff testified that he last worked in 2008, but there is income listed for both 2009 and 2010. (Tr. 63, 244, 272) After being questioned by the ALJ, Plaintiff admitted that he had worked in 2009. (Tr. 71) In July 2010, Plaintiff reported that he buys items for his minor child "out of my unemployment check." This suggests both that he had recently been working and that he was capable of working; yet, he testified that he had not received any unemployment or worker's compensation.[10] (Tr. 74, 286) Notes from September 2010 indicate that Plaintiff was "recently let go from job." (Tr. 431) In a June 2011 disability report, Plaintiff claims that he stopped working in March 2010. (Tr. 344) Yet, notes from October 2011 indicate that Plaintiff became unemployed in March 2011. (Tr. 740)

It is further significant that Plaintiff chipped his elbow in 1997, had knee surgery was in 2005, and has been depressed since his mother's death in 2008. However, he also previously worked with these impairments.[11]

---

[10]*Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991) (Applying for unemployment benefits is one factor an ALJ can consider when determining whether a claimant is able to work, and can be used, along with other evidence, to weigh the claimant's credibility.).

[11]*Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) ("[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability.").

In sum, the ALJ properly discredited the credibility of Plaintiff's claims when weighing the claims against the objective medical evidence – evidence that did not support Plaintiff's claim that he is unable to work.

### 3. Past Relevant Work

I have considered Plaintiff's arguments on this point as well as the Commissioner's response. I find that Plaintiff's argument is without merit. And as far as Plaintiff argument that the ALJ improperly found that he had past relevant work as a flagger, this argument is clearly contradicted by the record. Plaintiff testified, "That's the road department. I was a flagger." (Tr. 69)

### 4. Flagger and Cashier

Plaintiff asserts that the flagger and cashier II jobs do not fit within the RFC because both are beyond the non-exertional limitations set by the ALJ. Again, the non-exertional limitations were simple, routine, repetitive work where interpersonal contact is incidental to work performed and supervision is simple, direct, and concrete. (Tr. 25) It does appear that cashier II would be contrary to the requirement that interpersonal contact be incidental to work performed. However, this error would be harmless because the ALJ also found that Plaintiff could perform his past relevant work as a flagger.

## IV. CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's Complaint with prejudice.

IT IS SO ORDERED this 27th day of July, 2015.

                                                                                 _____
                                                                                 JOE J. VOLPE
                                                                                 UNITED STATES MAGISTRATE JUDGE